## IN THE COURT OF APPEALS OF IOWA

No. 23-0026
Filed October 11, 2023

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**BRANDON PEZHIN LAMERE,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Zachary Hindman, Judge.

Brandon Lamere appeals his conviction for first-degree theft, exercising control alternative, in violation of Iowa Code sections 714.1 and .2(1) (2022). **AFFIRMED.**

Priscilla E. Forsyth, Sioux City, for appellant.

Brenna Bird, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and Ahlers and Chicchelly, JJ.

**BOWER, Chief Judge.**

Brandon Lamere appeals his conviction for first-degree theft, exercising control alternative, in violation of Iowa Code sections 714.1 and 714.2(1) (2022).[1] The charge arises from allegations he exercised control over a stolen 2020 Nissan Rogue. Lamere contends the district court abused its discretion in denying his motion for a new trial, asserting the verdict was against the weight of the evidence. We affirm.

On January 23, 2022, Jacquelyn Adams[2] reported to police her 2020 Nissan Rogue had been stolen from her Sioux City driveway. She had parked the car in her drive at about 5:00 or 6:00 p.m. the day before; it was not locked. She heard her dog barking about 4:00 a.m.—but she did not look outside, and the dog calmed down. When she came outside at about 8:30 a.m., the car was gone. Her grandson, Jacob, who lived with her at the time, was in jail at the time and was released on January 24.

There are photos showing Lamere at a Casey's on February 1, 2022, in Sioux City, pumping gas into the 2020 Nissan Rogue—now with South Dakota plates. The windshield on the passenger side was cracked and there were luggage guards on top of the vehicle.

---

[1] Section 714.1(4) provides a person commits theft if he or she:
> [e]xercises control over stolen property, knowing such property to have been stolen, or having reasonable cause to believe that such property has been stolen, unless the person's purpose is to promptly restore it to the owner or to deliver it to an appropriate public officer.

Section 714.2(1) states "theft of property exceeding ten thousand dollars" constitutes theft in the first degree.

[2] Because Jacquelyn and Jacob Adams share the same last name, we will refer to them by their first names.

On February 5, after an unsuccessful high-speed pursuit of the vehicle by law enforcement, the abandoned Rogue was located in a lot. Crime scene investigator Sheila Rogeness was called to process the vehicle. She asked that it be towed to the police station because the cold temperatures outside tended not to yield usable fingerprints. She photographed and processed the vehicle the next morning. She found receipts from two stores with Lamere's name on them dated December 24 and 25, 2021. There was also a Dollar General receipt dated February 2, 2022. She also found an IRS letter with Lamere's name on it. Rogeness found latent fingerprints on the two driver's side doors and on the rear license plate, which matched Lamere's known prints.

Lamere was charged with first-degree theft. At trial, Jacquelyn testified Jacob lost one of her key fobs to the Rogue in June or July of 2021. He had been allowed to drive Jacquelyn's Rogue that day because his Jeep had a flat tire. Jacob returned later on foot saying he had lost the Rogue's key fob. Jacquelyn found the spare fob, and Jacob walked back to the Rogue and brought it back. But the lost key fob was not found.

Jacquelyn identified Lamere at trial as a person she once had given a ride to with Jacob because they both worked at the same place.

Jacquelyn also testified when the Rogue was stolen it was "in perfect shape," had Iowa license plates, and had 10,000 miles on the odometer. But when the Rogue was located, it was inoperable, had South Dakota plates, and thirty or thirty-one thousand miles on the odometer. She remembered that a number of items were inside the vehicle that she did not recognize, including a suitcase with men's clothing, which did not belong to Jacob, and documents connected to

Lamere. The title and registration documents Jacquelyn kept in the glove compartment were gone. On cross-examination, Jacquelyn acknowledged her insurance on the Rogue required Jacob not drive the vehicle. She was not aware Jacob had ever driven the Rogue without her permission.

Jacob testified the day the Rogue's key fob went missing—July 11, 2021—he had messaged Lamere early in the morning and they "were going to get together and smoke" methamphetamine.[3] He had known Lamere for quite some time; they were "using buddies." Jacob met up with Lamere and Jenn[4] at about 8:30 or 9:00 a.m. at a house on Military Road in Sioux City, and they "got high" sitting in the front seat of a truck Lamere had driven. When Jacob went back to the Rogue, he realized the key fob was missing because it was a push-start vehicle. If the fob was in the Rogue somewhere, it would have started. Jacob testified he searched in and around Lamere's truck but did not locate the key fob. Lamere then left for work while Jacob and Jenn continued to search for the key fob with no luck. Jenn dropped Jacob off at Jacquelyn's and then left for work. Jacob got the spare key fob from Jacquelyn and retraced his steps to the vehicle. The original fob was never found.

Jacob and Lamere exchanged text messages about the missing key fob between 12:33 p.m. to 6:10 p.m. At 3:39 p.m., Lamere texted Jacob asking if he had talked with Sarah about the key. Jacob testified he did not know why Lamere asked him that because even though she lived at the house on Military Road where

---

[3] Jacob testified he last used methamphetamine on September 2, 2021, and he had been sober (non-drinking) since May 12, 2022.

[4] Jacob's testimony does not include Jenn's last name.

he met up with Lamere and Jenn, they had not gone into the residence and Jacob did not know Sarah or have her phone number. Jacob asked Lamere to do that for him. Lamere responded at 6:10 p.m. that he had checked and had not found the key.

Jacob testified Lamere and he had smoked methamphetamine in Jaquelyn's garage three times. When asked how often Lamere had been in the Rogue, Jacob responded: "I would say once or twice. Once to—[Jacquelyn] gave he and I a ride when I worked with him at Zorts[5] one morning early in the morning and another time when I picked him up."

Jacob testified that when the Rogue was found:

It was like packed full of like bags of clothing, suitcase, hygiene items, pictures, mail. We didn't really have hardly anything in the car beforehand.
    Q. What did you and your grandmother have in the car before it was stolen? A. The vehicle information and stuff in the glove box, some other stuff that was just for the car in the glove box, convenience stuff, tissues, stuff like that. She had her Bible, maybe a cane, an umbrella, phone charger, and a chair.
    Q. So were there a lot of items inside the vehicle? A. No. When we recovered it, there was, yes.
    Q. And when you got the vehicle back from Prestige [for repair], you mentioned there was some mail inside the vehicle. Was there a name on the mail? A. Yeah. It was addressed to Brandon.
    Q. When you say Brandon— A. Brandon Lamere.
    Q. And you said that there were some photos inside the vehicle. Do you remember what those photos were of? A. I can't remember what exactly was in the background, but they were pictures of Brandon Lamere.
    Q. And you said that there was clothing inside the vehicle? A. Yes.
    Q. Did you—Was that clothing yours? A. No.
    Q. Did you recognize whose clothes that they were? A. The only clothes that I recognized was a blue hoodie that he always wore and a pair of shoes. There was male and female items in the vehicle.

---

[5] Zorts was a restaurant at the casino in North Sioux City, South Dakota.

Jacob denied putting South Dakota plates on the Rogue, giving Lamere keys to it, or giving Lamere permission to drive it. Jacob also denied driving the Rogue between January 24 and February 5, 2022.

On cross-examination, Jacob acknowledged he was actively using methamphetamine at the time the Rogue went missing. He also acknowledged he had a prior conviction for "aggravated criminal entry of motor vehicle"; he had no income and relied on his grandmother, gambling, selling methamphetamine for money to support his methamphetamine usage; and he had used Jacquelyn's Rogue without her permission at times. Jacob also acknowledged it was Lamere who got him a job at Zorts and that Jacob quit: "It was too early for me. I wound up—I just quit going. I had been drinking and using, and it just wasn't working out for me. I didn't get along with the kitchen manager very much as well."

Officer Dylan Grimsley testified he was on patrol in his marked vehicle on the night of February 4–5, 2022, and he was aware of an active stolen vehicle report for a silver Nissan Rogue. At about midnight, Officer Grimsley saw a silver Rogue across from him at an intersection. As the vehicle passed by him, the officer was able to view the driver, who he described on his radio as "a slender built Hispanic or Native male wearing a flat bill baseball hat." Officer Grimsley did a U-turn and followed the vehicle to read the license plate. The driver of the Rogue then sped up and made evasive turns. Officer Grimsley turned on his lights and siren and chased the vehicle onto the interstate, reaching speeds exceeding 100 miles per hour. The vehicle had South Dakota license plates that did not belong to the vehicle—62DX06. Eventually, the chase neared the casino in North Sioux City, South Dakota. Officer Grimsley had to slam on his brakes to avoid hitting

another vehicle pulling out from the casino in front of him, and he lost the suspect vehicle. Officer Grimsley testified another officer (Officer Jeffrey Demetri) located the Rogue "basically abandoned and parked nearby."

Officer Grimsley later saw pictures of Lamere at the Casey's on February 1 and noted it was the same person as the driver of the stolen Rogue he had chased and the license plate on the Rogue in that photo was the same as the one on the vehicle he chased. He identified Lamere in court as the driver. On cross-examination, Officer Grimsley admitted he initially described the driver as a Hispanic male and added the descriptor Native American to his report after seeing the photos from Casey's. Officer Grimsley testified there also was a woman in stolen Rogue, but he did not offer a description. Officer Grimsley acknowledged Jacob called the police station on January 24 to report he had lost the keys to the Rogue.

Officer Jeffrey Demetri testified he located the stolen Rogue about one-half mile from the casino area in an empty lot with its headlights on and the engine running. It had South Dakota plates that did not belong on that vehicle.

Jake Griffith testified he was working at the Casey's in Sioux City, Iowa, the morning of February 1. At about 9:50 a.m., a man came and went from the Casey's three times. The man prepaid for gas in change. Griffith asked an employee to go outside and take pictures of the man and his vehicle. Griffith identified the pictures taken of the man and a silver Nissan SUV. He identified Lamere as the person he saw at the Casey's and in the photos.

Jennifer Stewart testified for the defense that she was with Lamere when he was at the Casey's on February 2. She said "Jake," Jacob Adams, was driving

the Rogue that day. Stewart testified she was also in the Rogue when it was being chased by law enforcement and Jacob was driving that day as well.

On cross-examination, Stewart admitted she had been convicted of making a false police report in 2011, fifth-degree theft in 2014, second-degree theft in 2014, and identity theft in 2015. She stated she spoke with Lamere almost every day and has a close relationship with him. She claimed she did not know the Rogue was stolen on the day they were being chased but she did not believe the vehicle belonged to Lamere. Stewart said "Jacob hit a curb trying to turn into that place where he was trying to hide the car." And once the car came to a stop she jumped out and "ran to [her] friend Sarah's."

In rebuttal, Officer Grimsley testified he was able to see the driver and the whole front seat of the compartment of the Rogue before the chase. He was shown a picture he identified as a mugshot of Jacob Adams. He testified Jacob was "[a]bsolutely not" the driver of the Rogue on February 4 into February 5—Lamere was.

In closing arguments, the defense opined previously-convicted, methamphetamine-using Jacob had stolen the car and knew, if he was discovered driving, the insurance company would not pay for damages.

The jury found Lamere guilty of first-degree theft. He admitted he had twice before been convicted of a felony. Lamere's motion for new trial was denied, and he was sentenced to an indeterminate fifteen-year term of incarceration with a three-year mandatory minimum as a habitual offender. He appeals, contending the verdict is against the weight of the evidence.

We review the district court's denial of a motion for a new trial on weight-of-the-evidence grounds for an abuse of discretion—a deferential standard of review. *See State v. Stendrup*, 983 N.W.2d 231, 246 (Iowa 2022). "[W]e will not reverse the district court's ruling absent a 'clear and manifest abuse of discretion.'" *Id.* (citation omitted).

> The purpose of granting a new trial based on the weight of the evidence is to avoid a miscarriage of justice in which the evidence preponderates heavily against the verdict. It is "reserved for those situations in which there is reason to believe that critical evidence has been ignored in the fact-finding process." "A district court should grant a motion for a new trial only in exceptional circumstances."

*Id.* (internal citations omitted).

> Here, in ruling on the motion for new trial the court found:

> > With respect to the weight-of-the-evidence standard, that again is a different legal standard that the court has to apply. That's also set out in the parties' findings and in the *State versus Ellis*. Even applying that different standard, the court finds that the motion for new trial should be denied.
> > Certainly, there was some evidence in the defendant's favor here. Certainly there are some reasons to disbelieve some of the State's witnesses. But the weight of that evidence is not so great that the court is going to take this one from the jury.
> > Generally, the jury has the right to resolve those inconsistencies or conflicts in the evidence, and the inconsistencies such as they were or problems with the State's evidence were not so significant that the verdict was against the great weight of the evidence.

Lamere does not claim the district court applied the wrong legal standard. Rather, he maintains "the issue is one of weighing the evidence and the facts" and the district court came to the wrong conclusion. But "we do not reweigh the evidence and make an independent determination on whether the verdict was contrary to the weight of the evidence." *See id.* We determine only "whether the district court manifestly abused its discretion." *Id.*

As noted by the district court, there is some evidence to support the defense's version of events. But the evidence also shows Lamere was pumping gas into the stolen Rogue on February 2. He was driving during a high-speed chase with Officer Grimsley on February 4–5, 2022. The police found the stolen Rogue abandoned shortly after Officer Grimsley lost sight of the vehicle. Mail addressed to Lamere, clothing known to be Lamere's, and store receipts bearing Lamere's name were all found in the vehicle when it was processed. Lamere's latent fingerprints were found on the driver's door, the driver's side passenger's door, and on the South Dakota license plates on the stolen Rogue. This is not an extraordinary case where the evidence preponderates heavily against the verdict. Finding no manifest abuse of discretion in the district court's denial of Lamere's motion for new trial, we affirm.

**AFFIRMED.**